IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGUS M. DUTHIE and<br>MICHAEL J. CONDRON, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | No. 07 C 5491 |
| vs. | )<br>)<br>) | |
| MATRIA HEALTHCARE, INC., | )<br>) | Magistrate Judge Jeffrey Cole |
| Defendant. | )<br>)<br>) | |

## **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

This case has its roots in a pending arbitration proceeding, which grew out of a merger of one of Matria's subsidiaries – Coral Acquisitions Corp. – with CorSolutions Medical, Inc. At the time of the merger, Mr. Duthie was the Chairman and Chief Executive Officer of CorSolutions, while Mr. Condron was CorSolutions' President and Chief Operating Officer. Believing it had evidence of fraud by Messrs. Duthie and Condron in connection with the merger, Matria amended its response to Coral SR's demand for arbitration by adding a third party fraud claim against Messrs. Duthie and Condron, personally.

When the arbitrators rejected their contention that they were not proper parties in the arbitration, Messrs. Duthie and Condron sued Matria in this court to enjoin the arbitration proceedings against them. They prevailed. *See Duthie v. Matria Healthcare, Inc.*, 535 F.Supp.2d 909 (N.D.Ill. 2008). The Seventh Circuit affirmed the granting of the preliminary injunction. *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533 (7th Cir. 2008).

Messrs. Duthie and Condron have moved to amend their complaint to add claims against Matria for defamation *per se*, tortious interference with prospective economic advantage, and certain purported violations of the Employee Retirement Income Security Act ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). They have also moved to add Parker Petit, CEO of Matria and chairman of the board, as a defendant. Matria has objected on the theory that the amendment is futile, since it could not withstand a motion for summary judgment. Since, given the current posture of the case, that is the wrong test, the motion to amend is granted. The granting of this motion should not be read as indicating any view as to the ultimate merits of the claims.

## ANALYSIS

### A.
### The Proposed Additional Claims

The amended complaint charges that Matria defamed the plaintiffs by publicly accusing them of "fraudulent concealment" in connection with the CorSolutions merger, by stating that they were "active participants" in the alleged misconduct, and that by positing that they acted with the "intent to defraud Matria with respect to the merger." (Amended Comp. at ¶¶ 71-73). These statements were made in a memorandum to all former shareholders of CoreSolutions then employed by Matria. (Amended Comp. at ¶¶ 71). Messrs. Duthie and Condron suspect that this was done in retaliation for their efforts to enjoin the arbitration proceedings against them. (Amended Comp. at ¶¶ 75). They submit that the defamatory statements were false, injured their reputations, and impugned their integrity in the performance of their professions. (Amended Comp. at ¶¶ 120-131). The statements also had the effect of interfering with their efforts to seek employment or enter into contracts or

business relationships with parties in the health care field. (Amended Comp. at ¶¶ 132-137).

The other additional claim concerns the termination of Mr. Condron's healthcare coverage. The essence of this claim is that Matria engaged in a pattern of violating Mr. Condron's rights under ERISA from the moment his employment with CorSolutions was terminated. Under the terms of his severance agreement, he was entitled to healthcare coverage through January 2008. (Amended Comp. at ¶ 81). It is alleged that once he was terminated, he did not receive a notice pursuant to COBRA or a payment notice until four months past the date required by ERISA. (Amended Comp. at ¶¶ 82, 84). Thereafter, payment notices were sporadic and often sent after the due date. (Amended Comp. at ¶ 85). The health plan administrator accepted late premiums, seemingly acknowledging its mistakes. (Amended Comp. at ¶ 86). When Matria switched administrators, Mr. Condron received no notice of the change. (Amended Comp. at ¶¶ 87-88). His healthcare coverage was cancelled, but later reinstated by Matria. (Amended Comp. at ¶ 88). The new administrator followed the same course of sending tardy notices and of accepting tardy payments. (Amended Comp. at ¶¶ 89-91). Shortly after Matria filed its arbitration claim against Mr. Condron, it cancelled his coverage for failure to pay his contributions. (Amended Comp. at ¶ 94).

The administrator sent him two refund checks due to overpayment because of "[f]ailure to pay monthly premium." (Amended Comp. at ¶¶ 95-96). Mr. Condron maintains that he had fully paid the required premiums. (Amended Comp. at ¶ 102). He appealed the cancellation through the administrator but was unsuccessful. (Amended Comp. at ¶¶ 97-102). In addition, Mr. Condron alleges that Matria failed to reimburse him for his healthcare premiums through January 2008, as required by his termination agreement with the company. (Amended Comp. at ¶¶ 81, 105-06). All this, Mr. Condron claims, was in violation of ERISA.

Matria argues that the plaintiff's motion to add these claims should be denied because, when considered in context, the allegedly defamatory statements were innocuous, and because they are true. Matria contends that the plaintiff's tortious interference claims fails because they have not identified any specific third parties with whom plaintiff were seeking to enter a business relationship. As for Mr. Condron's claims, Matria says they must be arbitrated according to Mr. Condron's employment agreement. In addition, Matria contends that the evidence shows that he failed to pay his premiums in a timely manner.

## B.
## The Applicable Standard For Deciding A Motion To Amend A Complaint

Under the Federal Rules of Civil Procedure, a party may amend a complaint "with the opposing party's written consent or the court's leave," which "should [be] freely give[n]" when "justice so requires." Rule 15(a)(2). *See Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). The decision is left to the court's discretion. *Pugh v. Tribune Co.*, 521 F.3d 686, 698 (7th Cir. 2008). By its plain terms, the rule reflects a liberal attitude towards the amendment of pleadings – a liberality consistent with and demanded by the preference for deciding cases on the merits. *See Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004). *Cf. Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D.Ill. 2006)(collecting cases).

But there are limitations. Since the law never demands an empty formality, *compare Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 484 (7th Cir.2007); *Rockstead v. City of Crystal Lake*, 486 F.3d 963, 965-966 (7th Cir.2006), a court may deny a motion to amend if the proposed amendment would be "futile." *Soltys*, 520 F.3d at 743.[1] The issue here is what constitutes

---

[1] A motion to amend may also be denied if the moving party has unduly delayed in filing the motion,
(continued...)

4

futility. For the plaintiffs, futility is measured by the capacity of the amendment to survive a motion to dismiss. This is the formulation often repeated by the Seventh Circuit. *See e.g., Crestview Village Apts. v. U.S. Dep't Of Housing & Urban Dev.*, 383 F.3d 552, 558 (7th Cir.2004); *Barry Aviation Inc.*, 377 F.3d at 687 and n.3(collecting cases).[2] That means a proposed amendment must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, – U.S. –, –, 127 S.Ct. 1955, 1974 (2007). The plaintiffs' proposed pleading meets that standard, and with one exception, Matria does not suggest otherwise. Nonetheless, Matria argues that the plaintiffs' amendment is futile because it would not survive a motion for summary judgment, which for Matria is the test of futility – and apparently the only test. As we shall see, the tests employed by both parties are not mutually exclusive, but will vary with the procedural posture of the case.

Of course an amendment is futile if it would not survive a motion for summary judgment as *King ex rel. King v. East St. Louis School Dist.*, 189, 496 F.3d 812, 819 (7th Cir. 2007) held. But *King* did not pretend to suggest that futility is measured by the standards by which a motion for summary judgment under Rule 56 is measured. "It is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Services, Inc. v. Craddieth*, (7th Cir. 2006)(Posner, J.). *See also Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.)("Judges expect their pronunciamentos to be read in context. . . ."); *East*

---

[1](...continued)
or if the opposing party would suffer undue prejudice. *Soltys*, 520 F.3d at 743.

[2] "[F]utile repleadings include restating the same facts using different language,... reasserting claims previously determined,... failing to state a valid theory of liability,... and the inability to survive a motion to dismiss,...."*Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994).

5

*St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir. 2005)("Although we stated in *Panoramic* that damages would not adequately remedy a permanent loss of jobs... that language must be read in context."). [3]

In *King*, the court assessed the proposed amendment against the summary judgment standard because a motion for summary judgment had been filed and fully briefed before the motion to amend was filed. 496 F.3d at 814. Discovery was closed, and the court had a complete record by which to assess the plaintiff's additional allegations. *Id.* at 815-18. The district court considered and granted the motion for summary judgment, and denied the motion to amend. The Seventh Circuit affirmed both rulings on appeal and in that context, futility could only have been measured by the summary judgment standard.

Other cases in which futility was measured by the capacity of the proposed amendment to survive summary judgment were similarly far along. *See, e.g., Dewitt v. Proctor Hosp.*, 517 F.3d 944, 946 (7th Cir. 2008)(court granted summary judgment, then denied motion to amend, which Seventh Circuit found was an abuse of discretion); *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 914, 923 (7th Cir. 2007)(discovery closed and summary judgment motion briefed); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 856, 861-62 (7th Cir.2001)(same). Thus, in these cases, as in *King*, it would have been incongruous for the court to have defined futility in terms other than the capacity of the amendment to survive summary judgment.

The instant case is in its earliest stages. In fact, there has been *no* discovery, as the injunctive

---

[3] The Supreme Court has warned time and again against hyper-literal parsing of and preoccupation with words surgically excised from the broader context of an opinion. *See e.g., Florida v. Bostick*, 501 U.S. 429 (1991); *United States v. Apfelbaum*, 445 U.S. 115, 120 n.6 (1980); *Reiter v. Sonotone*, 442 U.S. 330, 341 (1979; *Penry v. Lynaugh*, 492 U.S. 302, 358 (1989)(Scalia, J., concurring and dissenting in part).

6

relief granted was based entirely on the terms of the Merger Agreement. Thus, to the extent Matria's oppositon is based on a "summary-judgment standard" and relies on evidence – and much of it is and does – it must be rejected. Acceptance of Matria's argument that futility is defined solely with reference to the summary judgment standard would effectively transform all Rule 15(a) motions into Rule 56 motions. But that would be a nonsensical – and thus impermissible – reading of Rule 15(a). *Cf. Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005) (Posner, J.)(Unreasonable consequences of even decent technical arguments for interpretation weigh heavily against the interpretation); *United States v. Logan*, 453 F.3d 804, 806 (7th Cir. 2006)(Easterbrook, J.)("courts read statutes to make sense rather than nonsense. Absurd possibilities are ruled out."); *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002)("Nonsensical interpretations of contracts as of statutes, are disfavored.").

## B.
## The Complaint May Be Amended To Include The Defamation Claim

Under Illinois law, statements that either (1) impute an inability to perform or want of integrity in the discharge of the duties of one's office or employment; or (2) prejudice a party, or impute lack of ability, in his or her trade, profession or business fall into the category of defamation *per se*. *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008). It is true, as Matria suggests, that:

> certain factors may render defamatory statements nonactionable as a matter of law. For example, if a defendant's statements are capable of an innocent, nondefamatory construction, a plaintiff cannot maintain an action for defamation *per se*.

*Madison*, 539 at 653. But since one must go beyond the face of a complaint to make such a determination, Matria's argument that the alleged defamatory statements are capable of an innocent construction is premature.

7

While Illinois courts consider this a question of law to be determined by the judge, "[a]llocation of functions between judge and jury in federal court . . . are a matter of federal law. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924-25 (7th Cir. 2003). The Seventh Circuit has instructed that facts beyond those in the complaint may be relevant to the reasonableness inquiry. *Id.*, at 925. Here, the plaintiffs "might be able to produce evidence showing that there is in fact no *reasonable* interpretation of the [statements] that would support an innocent construction." *Id.*, at 927. (Emphasis in original). Consequently, it would be premature to reject such a claim prior to discovery. *Id.*

In the main, Matria relies on an unpublished opinion, *Chicago Conservation Center v. Frey*, 40 Fed.Appx. 251 (7th Cir. 2002), to support its contention that the question of innocent construction can be determined at this point in these proceedings. Quite apart from the fact that unpublished decisions have no precedential force, Circuit Rule 32.1, the case is not helpful to Martria since the matter proceeded to trial, and was only resolved at the close of the evidence on a motion for judgment as a matter of law. 40 Fed.Appx. at 251-52. Like summary judgment, a judgment as a matter of law is evidence-dependent: it is "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, [is] sufficient to support the jury verdict...." *Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007). Thus, in *Frey*, the determination of futility required consideration of the context in which the statements occurred, "particularly the speed at which the conversation transpired." *Id.*, at 257.

Matria also argues, in a footnote, that the defamation claim cannot stand because the defamatory statements are true. Perhaps. But as Matria concedes, that ultimate determination depends on evidence and cannot be determined on the face of the proposed complaint.

8

## C.
## Plaintiffs May Add Mr. Condron's ERISA And COBRA Claims To Their Complaint

Matria's opposition to Mr. Condron's ERISA and COBRA claims is similarly evidentiary. It argues that Mr. Condron failed to make his premium payments in a timely manner. But, as Matria admits, the complaint alleges otherwise. Moreover, the evidence to which Matria adverts does not necessarily contradict Mr. Condron's version of the events. He concedes that premiums may have been late, but contends that notices were sent out late, and the administrators made allowances and accepted late payments. These are matters that cannot be resolved on a motion to dismiss, and thus do not preclude an amendment to the complaint.

Finally, Matria contends that Mr. Condron must arbitrate these claims based on a provision in his employment agreement. But Mr. Condron alleges that his claims are based on his "employment agreement and severance," and refers to the severance or termination agreement attached to the complaint as Exhibit C and which is a part of the complaint for all purposes. (Amended Comp., at ¶ 81); *Segal v. Geisha NYC LLC*, 517 F.3d 501, 505 (7th Cir. 2008). He argues that the termination agreement, which provides for his continued participation in the health plan under COBRA and does not provide for arbitration, supersedes the earlier employment agreement. It states that it "sets forth the entire agreement between the parties with respect to the matters herein, and fully supersedes any prior agreements between the parties with respect to such matters." (Amended Compl, Ex. C, § 7). It contains no provision for arbitration. This provision is not mentioned by Matria. The issue will likely require further development, but at this stage, it is sufficient to demonstrate that the amendment is not "futile."

# D.
## Plaintiffs May Add Mr. Condron's ERISA And COBRA Claims To Their Complaint

That leaves the plaintiffs' claim of tortious interference with prospective economic advantage. This is the one claim Matria does attack on the basis of the complaint's allegations arguing that it cannot stand because the plaintiffs failed to allege they had a business expectancy with a specific third party. But the cases upon which Matria relies are Illinois state court cases applying Illinois's pleading requirements. That's the same tack the defendant – and the district court – took in *Cook v. Winfrey*, 141 F.3d 322, 327-28 (7th Cir. 1998). It was rejected by the Seventh Circuit, which held that the:

> entire argument strays rather far afield from the minimal requirements of federal notice pleading. Having alleged that [defendant] improperly interfered with his "ability to enter into contracts or business relationships with third parties interested in purchasing the rights to publication of his experiences" . . . , [plaintiff] is under no obligation to plead further the facts that he believes support his claim.

*Cook*, 141 F.3d at 328.

It is true that the court in *Cook* was operating under the pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957) that *Bell Atlantic* interred – that a complaint should not be dismissed unless the plaintiff can prove no set of facts that would entitle him to relief. *See Bell Atlantic*, 127 S.Ct. at 1969 and n.8. But plaintiffs' allegations pass muster under the newer "plausibility" standard. As the Court in *Erickson v. Pardus*, – U.S. –, –, 127 S.Ct. 2197, 2200 (2007) emphasized, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." This is a notice pleading standard applicable in the federal courts, not the quite different fact-pleading standard in Illinois. *See Christensen v. County of Boone, IL*, 483 F.3d 454, 466 (7th Cir. 2007); *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006). The amended complaint's allegation that Matria falsely assailed the plaintiffs' reputations in the industry,

10

with consequent harm to their search for new employment, is sufficient under *Twombly* to give Matria adequate notice of the plaintiffs' claim.

## CONCLUSION

The plaintiffs' motion for leave to file an amended complaint is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/21/08